UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:                                                    CASE NO. 19-16856-RAM
ALEJANDRO FABIAN SCOLNIK,                                         CHAPTER 7
Debtor.
_____/

NINTER GROUP JB LLC
AND DIOS MANDA LLC                                        ADV CASE NO.19-
        Plaintiffs,
v.
ALEJANDRO FABIAN SCOLNIK,
        Defendant.
_____/


ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY
OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)


        NINTER GROUP JB LLC  AND DIOS MANDA LLC, pursuant to 11 U.S.C §

523(a)(2) of Title 11 of the United States Code, ("Bankruptcy Code"), and Rules 4007

and 7001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), jointly

and severally sue ALEJANDRO FABIAN SCOLNIK ("Defendant") to obtain a

judgment and determination that the debt owed by the Defendant to Plaintiffs is not

dischargeable.

# I.    INTRODUCTION

Defendant filed this case as a chapter 11 on 5/23/19; the case was converted to chapter 7 on 8/13/19.

The deadline for objecting to discharge is 12/30/2019. Deadline for filing claims is 01/02/2020.

## II.    NATURE OF ACTION, PARTIES, JURISDICTION AND VENUE

A.    Nature of Action -  Plaintiffs sue the Defendant seeking a judgment and determination that the debt owed to them by the Defendant is not dischargeable pursuant to § 523(a) (2) and Bankruptcy Rules 4007 and 7001.

B.    Parties  -  Plaintiffs are Florida Limited Liability Companies, and are sui juris.  Defendant is an individual, debtor in this case, and sui juris.

C.    Jurisdiction -   This court has jurisdiction of this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and 523(a)(2) which excepts from discharge debts specified.   This is a core proceeding for which the Court is authorized to determine all matters regarding this Adversary Proceeding in accordance with 28 U.S.C. § 157(b)(2)(I). This Court has authority to issue final orders and judgments in this Adversary Proceeding.

D.     Venue - Venue is proper in this district pursuant to 28 U.S.C. § 1409.

**III. Facts**

1.     Plaintiff Dios Manda LLC had filed suit 7/30/18 in the Circuit Court

of the 11th Judicial Circuit for Miami-Dade County, Florida, case number:2018-025731-

CA-01, against Debtor. A copy of the filed complaint and exhibits is attached hereto

and made a part hereof as exhibit "A". The state court complaint sets forth the facts

underlying this adversary complaint in detail.  Exhibit B is an official English translation

of the 1/3/18 mandatory letter of intent which is exhibited to the complaint, which

alleges:

> **1-** Defendant ALEJANDRO SCOLNIK hereinafter SCOLNIK individually and in his capacity as shareholder and/or managing Member of the corporate Defendant entered into a written Mandatory Letter of Intent dated January 3rd, 2018, whereby he obligated himself individually and as corporate representative of the various corporate Defendants, to sell an interest in each of the corporate Defendants, as set forth in said Agreement attached hereto as Plaintifrs Exhibit ' 1".
>
> **2-** Pursuant to the Agreement, Plaintiff DIOS MANDA, LLC., agreed to pay $1,200,000.00 in eight (8) payments, and did pay $606,000.00 in timely performance, pursuant to the terms of the Agreement stated above.
>
> **3-** Pursuant to the Agreement, SCOLNIK agreed to sell 50% interest in Defendant BRICKELL RESTAURANTE, hereinafter (BR), 50% interest in Defendant PIACERE NEWSY CAFE CORP., hereinafter (PA), and GODIVA AMERICA, CORP., hereinafter (GA). Defendant SCOLNIK further agreed to sell 25% in corporate Defendant THE GRAND, hereinafter (TG) and 25% in Defendant LATTE, S.I. for a total of 25% interest in the cafeteria restaurant located in Sunny Isles Beach, Florida
>
> **4-** Plaintiff paid to Defendant SCOLNIK the following sums:

a) $156,000 on February 5th, 2018;

b) $140,000.00 on February 5th, 2018;

c)  $160,000.00  on March 5th, 2018;

d)  $150,000.00  on April 5th, 2018;

e) For a total of $606,000.00 through and including April 5th, 2018.

5- In performing its due diligence in anticipation on closing on the purchase of the foregoing interest in the various restaurants, Plaintiff DM investigated the ownership and tenancy status of the restaurant located in Sunny Isles Beach, Florida, which the Defendant SCOLNIK represented he held 25% ownership, and learned Defendant SCOLNIK had previously sold his total 100% interest in corporate Defendant LATTES.I. CORPORATION, to an individual  by the  name of Marcos Peralta and at the time of executing the Mandatory Letter of Intent, he had no interest in the restaurant owned by LATTE S.I., to sell.

6- Defendant SCOLNIK also offered to sell 50% interest in corporate Defendant GODIVA AMERICAN, CORP., which operated the restaurant known as Santa Fe Bal Harbor.

7- At the time he executed the Mandatory Letter of Intent, Defendant SCOLNIK did not own 100% of said corporate Defendant, and in fact had no authority to unilaterally sell 50% of its shares.

8- Defendant SCOLNIK agreed to utilize the monies paid to it by Plaintiff DM to bring all rents current and to maintain the rents current at all times relevant hereto.

9- Instead, Defendant SCOLNIK diverted funds paid to him by the Plaintiff DM and failed to make rent payments for some locations, payments for the restaurant operated by corporate Defendant BR, known as Santa Fe located at Brickell City Center, and failed to pay the rent at the restaurant operated by corporate Defendant GA, the restaurant in the Bal Harbor shops.

10-  As a result of failure to pay the foregoing rents, both corporate Defendants BR and GA were served with complaints for possession and eviction.

11-  Contrary to the terms of the Mandatory Letter of

Intent, Defendant SCOLNIK has failed to transfer in proportion to the payments received, any interest in any of the restaurants, despite the fact he has received more than one half of the monies agreed to be paid by the Plaintiff DM.

**12-** The Plaintiff DM has made demand upon Defendant SCOLNIK for transfer of the interests in the various corporate Defendants, in proportion to the payments made, but Defendant SCOLNIK refuses to do so.

**13-** The Plaintiff DM has also made demand for return of the $606,000.00 as a result of the Defendant's breach, but Defendant SCOLNIK refuses to do so.

**14-** Defendant SCOLNIK assured the Plaintiff, he had the right as owner, operator and shareholder of Defendant LATTE SJ., and THE GRAND, to convey 50% of his interest in each corporate Defendant, for a total of 25% interest in the two corporate Defendants which operated the cafeteria restaurant at Sunny Isles Beach, Florida.

**15-** The Defendant SCOLNIK's statement as to his ownership in said corporate Defendants was false at the time he made the statement, in that he had previously sold all of his interest in said two corporate Defendants to another individual by the name of Marcos Peralta.

**16-** Defendant SCOLNIK knew the statement he made to the Plaintiff **DM** was false at the time of making it and he made it with intentions to induce the Plaintiff DM rely upon his statement.

**17-** The Plaintiffs' did rely upon the false representation made by Defendant SCOLNIK and made payments of $606,000.00 to the Defendant based in part, on said false representations as stated above.

**18-** It was reasonable under the circumstances for the Plaintiff DM to rely on Defendant SCOLNIK's representation and the Plaintiff did so to its detriment and loss.

**19-** The Plaintiff DM has been damaged as a result of the fraudulent and false representation made to it by Defendant SCOLNIK as stated herein.

**20-** Defendant SCOLNIK represented to the Plaintiff he had authority and ownership of 100% of the shares of Defendant GA.

**21-** Defendant SCOLNIK did not have 100%
ownership of the shares and in fact could not
transfer any ownership interest in Defendant GA,
without the consent and approval of the co-owner,
Gladys Ulloa Scolnik.

**22-** Defendant SCOLNIK knew the statement he
made to the Plaintiff DM was false at the time he
made it, in that he did not have the ability to convey
50% interest in Defendant GA. Defendant SCOLNIK
made the false statement with the intent to induce
DM to pay him money.

**23-** The Plaintiff DM reasonably relied on the
statements made to it by Defendant SCOLNIK to its
detriment and suffered damages.

**24-** Plaintiff DM has suffered damage as a result of
the fraudulent mispresentations made to it by the
Defendant SCOLNIK.

2.      On May 20, 2019 Dios Manda and Scolnik individually and as corporate president

or managing member, entered into a stipulation for dismissal of the state litigation, exhibit

"C" hereto.

3.      The dismissal was based on a Confidential Management and Operating

Agreement for plaintiff Ninter Group JB LLC to operate Santa Fe News and Expresso

Café' at the Bal Harbour Shops, exhibit "D" hereto.  Defendant both as President of

Godiva American Corp, and Individually agreed to dismissal of  the pending state court

litigation with the new agreement to be the essential element to be fulfilled as

consideration of dismissal. The agreement provided:

a.  Six Hundred Six Thousand Dollars ($606,000)
principal for loans previously paid by ASSIGNEE to
ASSIGNOR;

b.  Interest at the rate of 6.5% from April 5, 2018
through May 15, 2019, Forty Three Thousand Seven
Hundred and Ten Dollars ($43,710.00);

c.  Resort tax paid by Assignee to the City of Bal Harbour;

d.  Twenty Seven Thousand Five Hundred Sixteen
Dollars ($27,516.00); Attorneys fees incurred by

Assignee including litigation in Case No. 2018-025731;

e. Seventeen Thousand Seven Hundred Two Dollars ($17,702.00) interest on principal through November 15, 2019, Nineteen Thousand Four Hundred Forty Dollars ($19,449) for a total of $714,368.

3.      Defendant in paragraph 12 of the agreement represented and affirmed he was the sole shareholder of Godiva American Corporation and authorized to bind the company and himself.

4.      Three days after entering to those agreements, on May 23, 2019, Defendant filed chapter 11. and listed Plaintiff Dios Manda as one of the 20 largest creditors with a contingent claim of $606,000.

5.      On June 17, 2019 Scolnik moved to voluntarily dismiss the chapter 11. On July 15, 2019, Creditor FiveTower LLC objected to dismissal (Doc 36) alleging the Debtor prepetition, had conveyed and/or transferred to other parties the Debtor's ownership interests in various restaurants that the Debtor previously pledged to FiveTower  and in which FiveTower was granted a duly perfected security interest, complaining that it had not been paid, and complaining about the Dios Manda LLC agreement and payments among other things.

Subsequently Defendant moved to convert and this case was converted to chapter 7 on 8/13/19 (Doc 60).

6.      Plaintiffs now learned that Defendant had committed a whole additional layer of fraud. The Dios Manda agreement required Scolnik to become

current and pay his obligations to FiveTower. Scolnik had caused a sale of future

accounts receivable to FiveTower beginning in July 2016, had recorded UCC 1

financing statements 9/22/16, and on 2/18/17 had granted to FiveTower stock and

membership pledge agreements, including Godiva, which prohibited Defendant

from any transfers.

Additionally, it now become clear that certain representations in the

1/3/18 mandatory letter of intent concerning FiveTower were also false. In

paragraph 2 Defendant represents he will use the $1,200,000 to pay

FiveTower. In paragraph 10 Defendant also represents the proceeds will be

applied to FiveTower.  Scolnik knew those representations were false and

made the representations to induce Plaintiff Dios Manda, which reasonably

relied on the representations to its detriment and was damaged.

7.    Defendant had defrauded Defendants twice. First defrauding Plaintiff

Dios Manda LLC and then defrauding Plaintiff Ninter Group JB LLC.


### COUNT I—11 U.S.C. § 523(a)(2)(A) Fraud

8.    Plaintiffs  re-allege the allegations set forth in paragraphs 1 through  7
above.

9.    Section 523(a)(2)(A) provides that a discharge under § 727 does not

discharge an individual debtor from any debt for money to the extent obtained by actual

fraud.

The debt the Debtor owes to Plaintiffs is not dischargeable under 523(a)(2)(A) and (B), because of the fraudulent conduct of the Debtor in committing (A) false representations and fraud and (B) use of the false written agreements respecting Defendant's financial condition:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>>
>> (B)use of a statement in writing—
>>
>> (i)that is materially false;
>>
>> (ii)respecting the debtor's or an insider's financial condition;
>>
>> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>>
>> (iv) that the debtor caused to be made or published with intent to deceive;

10.    In *Husky*, the Supreme Court clarified that § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effectuated without a false representation. *Husky*, 136 S. Ct. at 1585-86.

11.    The facts in this case evidence that Defendant procured and increased Plaintiffs' investments by false pretenses, false representations, conspiracy to commit fraud, and committed actual fraud by, including, but not limited to the allegations in paragraphs 1-7 above, that the Defendant made and conspired to make representations; the Defendant knew at the time the representations were false; the Defendant made the representations with the intention and purpose of deceiving the Plaintiffs, the Plaintiffs relied on the representations; and the Plaintiffs sustained damages as the proximate result of the representations.

12.    The above alleged facts touch each element of 523(a)(2)(A) : (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; (B) use of a statement in writing— (i)that is materially false; (ii)respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive.    13.

Consequently, the Defendant's debt to Plaintiffs is one for money, property, or services obtained by false pretenses, false representations, or actual fraud, and is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

Wherefore Plaintiffs jointly and severally demand judgment against Defendant for their damages, plus pre-judgment interest, costs and attorneys' fees in the state and bankruptcy cases, and that the judgment be declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A); that the Court enter judgment against the Defendant in the amount of the damages, and order execution on the judgment, and grant Plaintiffs such other and further relief as this case may require and the Court deems just and proper.

We hereby certify that a true copy of the foregoing was served on all parties by CMECF

Respectfully submitted

JOEL M. ARESTY, P.A.
Counsel for Plaintiffs
Board Certified Business
Bankruptcy Law
309 1st Ave S
Tierra Verde FL 33715
Phone: 305-904-1903
Fax: 1-800-559-1870
E-mail: Aresty@Mac.com
By:/s/ Joel M. Aresty, Esq.

Fla. Bar No. 197483
